[L. A. No. 297. Department Two.—April 9, 1898.]

## CHEMICAL NATIONAL BANK OF NEW YORK, Respondent, v. S. G. HAVERMALE et al., Defendants. THE CALIFORNIA NATIONAL BANK, Appellant.

CORPORATIONS—NATIONAL BANK—ACQUISITION OF STOCK IN OTHER CORPORATIONS.—A national bank has no power to purchase or subscribe for the stock of another corporation, but may, as incidental to its power to loan money on personal security, in the usual course of doing such business, accept stock of another corporation as collateral, even for a previous indebtedness, and by the enforcement of its rights as pledgee may become the owner of the collateral, and subject to liability as other stockholders.

ID.—ULTRA VIRES—LIABILITY AS STOCKHOLDER—ESTOPPEL.—The acquisition by a national bank, in any other manner, of stock in another corporation, is an *ultra vires* act and void, and creates no liability to the creditors of the corporation whose stock was attempted to be transferred, and the bank may urge such want of power to defeat an attempt to enforce against it the liability of a stockholder, and is not estopped, by the receipt of dividends on the stock, from setting up such want of power.

ID.—FEDERAL QUESTION.—The question as to the power of a national bank to subscribe for, purchase, or own shares of stock in another corporation must be determined from the statutes of the United States, as construed by the supreme court of the United States.

ID.—PAYMENT BY DIVIDENDS TO BANK.—The payment of dividends declared on the stock of another corporation, standing in the name of the officers of a national bank, by a check drawn in favor of the bank, is not conclusive that the bank was the owner of the stock.

ID.—UNAUTHORIZED TRANSFER BY OFFICER OF BANK.—Evidence that certificates of stock in another corporation, drawn in favor of the officers of a national bank, without ever having been delivered to them, were afterward presented by one of such officers, without being indorsed, for transfer by the bank, is not sufficient to show an acquisition by the bank of the title to the stock in any mode by which it was authorized to acquire it.

ID.—EVIDENCE OF UNAUTHORIZED SUBSCRIPTION.—In an action against a national bank to charge it with liability as a stockholder in another corporation, it is error to reject evidence offered by the bank that it never authorized its officers to subscribe for stock in such corporation.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. W. L. Pierce, Judge.

The facts are stated in the opinion.

James E. Wadham, and Frederic W. Stearns, for Appellant.

Parrish & Mossholder, for Respondent.

HAYNES, C.—On September 15, 1891, the defendant, the California Savings Bank, issued to J. W. Collins a certificate of deposit for the sum of five thousand two hundred and twenty-five dollars, payable four months after date, and said certificate was afterward, and before its maturity, sold, indorsed, and delivered to the plaintiff for value in the usual course of business. On November 12, 1891, said savings bank and said national bank, being each insolvent, closed their doors and ceased to do business. This action is prosecuted to recover from said savings bank the amount of said certificate of deposit, and to recover from the defendants Havermale and the California National Bank, as stockholders in the savings bank, their several proportions thereof. Havermale made default. Said national bank and the savings bank each answered. The cause was tried by the court without a jury, and findings and judgment were for the plaintiff, as prayed for against each respectively. This appeal is taken by the California National Bank alone, and is from the judgment and an order denying its motion for a new trial.

The motion for a new trial is based upon the insufficiency of the evidence to justify certain findings, that the court erred in its rulings upon certain questions of evidence, and that certain findings and decisions are against law.

Among the questions thus raised are the authority of the savings bank to issue certificates of deposit, and whether the certificate issued to Collins and now owned by the plaintiff was issued upon or for money deposited; but in the view we take of the case it is not necessary to consider those questions—the savings bank not having appealed—and we will therefore assume, for the purposes of this opinion, that said savings bank had such power, and that said certificate of deposit was regularly issued for money deposited by Collins, to whom it was issued and made payable, and that plaintiff had full right to recover thereon, not only against the savings bank, but also against all stockholders who are liable as such for their proportion of its debts, and consider only those

questions directly relating to the liability of the appellant, the California National Bank, as a stockholder in the savings bank.

The court found that appellant was at the time said certificate of deposit was issued the owner of fifteen hundred shares of the capital stock of said savings bank, that two thousand five hundred shares were issued, and that appellant is liable to the plaintiff for three-fifths of the amount due from the savings bank.

The answer of the defendant, the California National Bank, the appellant here, after denying that it was at any time the owner of any of said stock, alleged: "That if any of the stock of the said California Savings Bank was ever issued to this defendant it was issued without authority from it, and without authority of law, and that the same was issued without the knowledge or consent of this defendant. Defendant alleges that it has never acquired in the usual course of business, or now has, as owner or otherwise, any stock of the said defendant, the California Savings Bank."

That appellant is, and at all the times mentioned in the complaint was, a national bank duly incorporated under the laws of the United States, is distinctly alleged in the complaint; and therefore the question as to the power of appellant to subscribe for, purchase, or own shares in said savings bank is one that must be determined from the statutes of the United States, and as to the construction of those statutes in that regard we must look to the supreme court of the United States, just as that court looks to the decisions of this court for the construction given to our own statutes where no federal question is involved.

The case of *Kennedy v. Savings Bank,* 101 Cal. 495, involved the same questions that arise here. That case was against the same savings bank, and the California National Bank was made a defendant, as here, for the purpose of enforcing its alleged liability as a stockholder in the savings bank. The plaintiff had judgment, and the California National Bank appealed, and this court affirmed the judgment. The national bank thereupon took the case to the supreme court of the United States upon writ of error, and that court reversed the judgment.

It was there held that national banks had no power to purchase or subscribe for the stock of another corporation, though it was

conceded that, "as incidental to the power to loan money on personal security, a bank may, in the usual course of doing such business, accept stock of another corporation as collateral and by the enforcement of its rights as pledgee it may become the owner of the collateral, and be subject to liability as other stockholders. (*Germania Nat. Bank v. Case*, 99 U. S. 628.) So, also, a national bank may be conceded to possess the incidental power of accepting in good faith stock of another corporation as security for a previous indebtedness. It is clear, however, that a national bank has no power to deal in stocks."

It was further held that dealing in stocks of another corporation is an *ultra vires* act, and that stock so acquired creates no liability to the creditors of the corporation whose stock was attempted to be transferred, and that the bank may urge such want of power to defeat an attempt to enforce against it the liability of a stockholder. That court, quoting from *Central Transp. Co. v. Pullman Palace Car Co.*, 139 U. S. 59, 60, further said: "A contract of a corporation which is *ultra vires* in the proper sense (that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature) is not voidable only, but wholly void and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

In the Kennedy case, as here, it was shown that dividends had been paid by the savings bank to appellant—in this case on fifteen hundred shares—but it was held by the supreme court of the United States that appellant is not thereby estopped from questioning its ownership and consequent liability, and that such claim "is but a reiteration of the contention that the acquiring of stock by the bank, under the circumstances disclosed, was not void, but merely voidable. It would be a contradiction in terms to assert that there was a total want of power by any act to assume the liability, and yet to say that by a particular act the

liability resulted.   The transaction, being absolutely void, could not be confirmed or ratified," and could not be enforced, or rendered enforceable, by the application of the doctrine of estoppel.   (See, also, *Knowles v. Sandercock,* 107 Cal. 629, 642.)

It is not contended by respondent that any stock of the savings bank was acquired or held by appellant as a pledge, or as security for a loan, or taken in payment of a debt, or in the usual course of business as a bank, though it is not directly admitted that it was not so taken or acquired; and in that lies the only distinction between this and the Kennedy case.   There it was admitted upon the trial that the stock of the savings bank was not "taken as security, or anything of the kind."   In this case, however, the evidence shows that while a certificate for nine hundred and ninety shares was issued in the name of the bank, it fails to show that it was issued under such circumstances as to charge the bank as owner in this action.   Said savings bank was incorporated in November, 1889, by J. W. Collins, D. D. Dare, William Collier, S. G. Havermale, and H. F. Norcross, with a capital stock of two hundred and fifty thousand dollars, divided into two thousand five hundred shares, and each of said incorporators subscribed for five hundred shares.   Of these Collins and Dare, at least, were connected with the national bank, and were "the persons who conducted the business and ran the affairs of the bank."   The business of both banks was conducted in the same room, and Collins managed the affairs of the savings bank and was at the same time cashier of the national bank.   Original certificate No. 4 was issued in the name of William Collier for five hundred shares, and No. 6, for four hundred and fifty shares, was issued also in the name of Collier upon cancellation of No. 4.

Certificate No. 5 was issued in the name of Norcross for five hundred shares, and No. 8 for four hundred and fifty shares was issued in his name.

Certificate No. 10 for ninety shares was issued for parts of four and five in the name of Collins, leaving five shares each to Collier and Norcross.

On January 2, 1891, Collins surrendered certificates 6, 8, and 10, No. 6 being in the name of Collier, No. 8 in the name of

Norcross, and No. 10 in his own name, and took certificate No. 12 for nine hundred and ninety shares in the name of the national bank. None of the certificates that were issued in the name of Collier and Norcross, respectively, were indorsed or assigned by either, nor was any power of attorney or other authority from them produced by Collins authorizing said transfers to be made.

Prior to the issuance of said certificate for nine hundred and ninety shares to the bank on January 2, 1891, the savings bank declared and paid two dividends upon its stock, each for five per centum. Upon the first dividend there was paid to the national bank by the check of the savings bank seven hundred and fifty dollars, or five per cent on fifteen hundred shares, namely five hundred shares in the name of Collins, five hundred in the name of Collier, and five hundred in the name of Norcross.

The second dividend was also paid by check for the same amount on January 1, 1891, upon nine hundred and ninety shares in the name of the bank, and upon five shares in the name of F. T. Hill (the cashier of the savings bank), five shares in the name of Collier, and five hundred shares in the name of Collins.

The fact that Collins continued to carry in his own name the five hundred shares originally subscribed by him, and that he dealt or assumed to deal as cashier with the ninety shares, part of the Collier and Norcross certificates, and which was afterward included in the nine hundred and ninety shares issued to the bank, shows that he and not the bank owned said five hundred shares standing in his name, notwithstanding the dividends thereon were included in the seven hundred and fifty dollar check. As he was cashier, the dividend due him could readily be adjusted with the bank. The evidence of title shown upon the face of the certificate is not conclusively affected by the manner in which the dividend was paid.

The finding, therefore, that the bank was the owner of fifteen hundred shares is not justified by the evidence. Whether the national bank is liable as a stockholder upon the nine hundred and ninety shares evidenced by the certificate issued in its name remains to be considered.

It might be argued with much force that the bank could not, consistently with the facts disclosed by the evidence, have ac-

quired the shares subscribed for and issued in the name of Collier and Norcross, respectively, otherwise than by original subscription; that is, by procuring those subscriptions to be made for its benefit.

If those subscriptions had been made by Collier and Norcross as their own, and the bank had afterward purchased the shares so subscribed for, or had taken them as collateral security, ordinary business prudence would have required that the certificates should be assigned or indorsed in writing thereon, so that for whatever purpose they were taken the bank could avail itself of whatever benefits, rights, or interests were intended to be acquired. It does not appear, however, that the certificates of the shares subscribed for by these persons, though their names were inserted therein, were ever delivered to them, but do appear to have been presented by Collins unassigned and unindorsed; and by his direction the stub of the certificate was made to show that they were presented and surrendered for transfer by the California National Bank. Whether this evidence shows a subscription by or for the national bank need not be decided. It certainly does not show that it acquired title to the stock in any mode by which it was authorized to acquire it, and that question was made both by pleading and by objection to evidence.

This case was tried after the judgment in the case of *Kennedy v. Savings Bank, supra,* had been affirmed by this court and the principles announced in that case were followed upon the trial of this case. It was there held that so long as the national bank held itself out as a stockholder, "it ought not to be permitted to defend against its liability as such stockholder by showing that it had become such in violation of law." It was doubtless because of that statement that the trial court ignored the issues made by the answer of appellant "that if any stock of the said California Savings Bank was ever issued to this defendant it was issued without authority from it and without authority of law, and that the same was issued without the knowledge or consent of this defendant. Defendant alleges that it has never acquired in the usual course of business, or now has, as owner or otherwise, any stock of the said defendant, the California Savings Bank."

There can be no doubt of the materiality of these issues, and to them the findings should have responded.

The fourth finding is as follows: "That at the time said certificate of deposit was issued the said defendant, S. G. Havermale, was the owner of five hundred of said shares of the capital stock of said savings bank, and said defendant, the California National Bank, was the owner of fifteen hundred of said shares of the capital stock of said savings bank."

As we have seen, the evidence does not justify this finding as to the number of shares held by the national bank, and as the basis of a conclusion of law that it is liable to the plaintiff, as a stockholder, must be construed to mean that whether it was acquired by an act *ultra vires*, or by an officer of the bank without authority, could not and does not affect the question of appellant's liability. This is made clear by a ruling made during the trial.

The national bank called a witness who produced the book containing the minutes of the board of directors of said national bank, and offered in evidence the minutes of a meeting of the board. The plaintiff objected, on the ground "that it does not make any difference"; and this objection was sustained, and defendant excepted. The national bank then "offered to prove by the record-book of the board of directors of the California National Bank that no authority was ever given or conferred by the board of directors to J. W. Collins, or any other officer or officers of said California National Bank, to make any subscription or subscriptions for any share or shares of the capital stock of the California Savings Bank, or to receive any money therefor."

An objection to this offer that it was incompetent, irrelevant, and immaterial was sustained, and an exception taken.

This ruling, though justified by the Kennedy case in this court, must be held erroneous under the decision of the same case in the supreme court of the United States.

I think, also, for the reasons above stated, that appellant's specification that the fourth finding, so far as it relates to appellant, is against law must be sustained, inasmuch as it must be understood in order to support the judgment that the manner in which the stock was acquired is an immaterial factor in

determining the liability of the bank as a stockholder; for, if the finding had been that it acquired the stock by original subscription, the finding would not have supported the judgment rendered against appellant.

For the error of the court in excluding the said offered evidence, and because of its failure to find upon the issues presented by appellant's answer, the judgment and order appealed from should be reversed.

Belcher, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

McFarland, J., Temple, J., Henshaw, J.