[Civ. No. 15369. Second Dist., Div. Two. Feb. 4, 1947.]

E. S. ROBINSON et al. (a Partnership), Respondents, v. CHAPMAN SQUARE, INC. (a Corporation), Appellant.

Reynolds & Painter and Louis Miller for Appellant.

Arthur J. Speight for Respondents.

WILSON, J.—Since the evidence is insufficient to sustain the basic finding of fact that plaintiffs and defendant entered into the several contracts therein described without which the judgment in favor of plaintiffs from which defendant has appealed cannot survive, the judgment must be reversed.

The action is to recover damages for loss of profits alleged to have been suffered by plaintiffs by reason of defendant's refusal to permit them to perform contracts for the installation of sheet metal work in a number of dwellings erected by defendant. Plaintiffs alleged and the court found that on or about January 24, 1944, contracts were entered into whereby they agreed to do the work and defendant agreed to pay stated prices therefor; that defendant renounced and repudiated its agreements, depriving plaintiffs of their anticipated profits.

One Jane Reed Kissinger owned two tracts of real property in Los Angeles County which, in the latter part of 1943, she was planning to subdivide and to develop for sale by erecting small dwellings thereon. One tract was known as the Pleasant Valley Tract, the other as Chapman Square. On December 1, 1943, Robinson, one of the plaintiff partners, visited Mrs. Kissinger's place of business to solicit orders for the sheet metal work to be installed in the buildings on her two tracts. Her agent, I. H. Brown, gave him several blueprints designated by plan and elevation numbers. The blueprints were not otherwise identified and contained no reference either to Pleasant Valley or to Chapman Square. From these blueprints Robinson made his estimates in duplicate on plaintiffs' printed forms for the sheet metal work required for the various buildings, referring to the plans by their respective numbers. The estimates did not state how many houses were to be constructed from each plan. His offers were dated December 1, 1943. Each offer was for work on "Building of Jane Reed Kissinger." He gave Mrs. Kissinger the copy of each estimate and retained the original. Robinson returned to Mrs. Kissinger's office on January 24, 1944, where he saw Brown, with whom he had previously conferred, and was introduced by him to G. R. Branch, whom Mrs. Kissinger had employed on January 9, 1944, as her building superintendent. Robinson brought with him on this occasion the originals of the estimates. Branch was authorized by Mrs. Kissinger to sign and he did sign an acceptance dated January 24, 1944, on each estimate, signing "G. R. Branch" without any designation as to whether he was acting as agent for any other person, and if so for whom. Defendant's name did not appear on any of the originals or copies of the estimates.

On the date on which the acceptances were signed articles of incorporation were filed in the office of the Secretary of State of both Pleasant Valley Homes, Inc. and Chapman Square, Inc. The directors were the same in each corporation. Plaintiffs performed their contracts on the buildings in the Pleasant Valley Tract, comprising 87 homes, the work extending over the period from April to July, 1944, after which they received a letter from Chapman Square, Inc., signed by Mrs. Kissinger as president, notifying them that their services would not be required on the Chapman Square

dwellings. It is for the loss of profit on the latter project that this action is prosecuted.

■ It is clear that there were no contracts between plaintiffs and defendant. The estimates or offers were made by plaintiffs to Mrs. Kissinger as an individual long before Chapman Square, Inc. was incorporated. In accepting the offers with Mrs. Kissinger's authority Branch must be deemed to have been acting as her agent. There is no evidence that he was authorized by defendant to sign the acceptances on its behalf, nor is there evidence from which an inference to that effect may be drawn. The fact that the acceptances were signed and the articles of incorporation of Chapman Square, Inc. were filed on the same day is not a controlling nor even a persuasive circumstance. Branch had become the employee of Mrs. Kissinger on January 9, 1944. His salary was paid by her for a short period of time, then by Pleasant Valley Homes, Inc. until July, 1944. When his service with the latter company ceased he went into the employ of defendant.

Upon the organization of the two corporations Mrs. Kissinger became president and Brown secretary of each. Later plaintiffs received by mail preference ratings or "priorities" from Pleasant Valley Homes, Inc. and Chapman Square, Inc., each signed by I. H. Brown, secretary. Each document authorized the purchase of galvanized iron and solder, materials necessary in the performance of the work covered by plaintiffs' estimates. While these facts and the fact that the Pleasant Valley work was completed and paid for may be considered as indicating Mrs. Kissinger's intention or expectation, at the time plaintiffs made their offers to perform the work, to incorporate the two companies and through them to erect the dwellings, they do not tend to create contracts between plaintiffs and defendant nor to establish liability of defendant for the loss, if any, suffered by plaintiffs.

Mrs. Kissinger's direction to Branch to sign the offers addressed to her created a liability against her, but since it is not contended that defendant corporation was her *alter ego,* her authorization to accept the offers did not bind defendant. The facts that Branch and Brown acted for Pleasant Valley Homes, Inc. and that the work in the Pleasant Valley Tract was completed and paid for by that corporation shows that it adopted and acted under the contracts between plaintiffs and Mrs. Kissinger pertaining to the homes erected

in its subdivision; but there is no inference, as contended by plaintiffs, that defendant adopted the contracts with her that covered the buildings in Chapman Square.

Although the two corporations had the same officers and directors they were separate entities. There is no evidence that the shares of stock were held by the same persons or in the same proportion. The signing by Mrs. Kissinger of the so-called renunciation of the contracts relating to the last named tract was within her authority as president of defendant corporation. Having concluded that there were no contracts between the litigating parties and no liability on the part of defendant, we need not speculate as to Mrs. Kissinger's mental processes leading to the sending of the letter cancelling the contracts. Nor need we consider whether or not plaintiff should have sued Mrs. Kissinger on her personal liability under the contracts signed on her behalf by Branch.

Since there is no basis for an action against defendant the other assignments of error are removed from discussion.

Judgment reversed.

Moore, P. J., and McComb, J., concurred.