[Civ. No. 3837.   Fourth Dist.   Oct. 14, 1949.]

F. H. SMITH et al., Respondents, v. GLO-FIRE COMPANY (a Corporation), Appellant.

Alva D. McGuire for Appellant.

Loyal C. Kelley for Respondents.

GRIFFIN, J.—Plaintiffs brought this action against defendant Glo-Fire Company, a corporation, alleging in the first count that on or about April 8, 1946, plaintiffs sold to it certain lumber (classified as "shim stock" used for crating radiant gas logs manufactured by defendant company), which was delivered to defendant between April 8 and May 25, and that defendant agreed to pay plaintiffs $2,001.92 therefor, but that it refused to make such payment. The second count is based on a claimed indebtedness in the same sum and a promise to pay it. The third count is for the reasonable value of the merchandise. The fourth count is based upon an account stated.

The court found in all respects in favor of plaintiffs on count one, excepting as to the amount due, which was found to be $1,947.50. As to count two it found that on May 25 defendant was indebted to plaintiffs in the sum of $1,947.50, and that it promised to pay said amount upon request, but refused. As to the third count, it found that on May 25, as alleged in the complaint, in consideration of the fact that plaintiffs had before that time sold and delivered to defendant certain lumber, it promised to pay plaintiffs the reasonable value therefor but refused to do so. A finding in favor of defendant corporation was noted on the fourth count. Judgment was entered accordingly and defendant appealed.

A Mrs. Warfield operated the Glo-Fire Company, under a fictitious name, in Elsinore. About April 8th, she asked plaintiffs to see if they could obtain some shimstock. It was difficult to secure at that time. She then told plaintiffs that there was a possibility of a sale of the business and that she was going to "make contact" with the prospective purchaser about buying the lumber if plaintiffs were able to secure it. She later stated to plaintiffs that she had "contacted" a Mr. Camp, the prospective purchaser, and that he agreed to accept the lumber in her stead. She testified that Mr. Camp's plant foreman was with her at plaintiffs' place of business when she gave the final order for the lumber to be delivered to defendant's plant, and that the foreman represented himself as Mr. Camp's foreman. On May 25th, the lumber was delivered to defendant's place of business. Subsequent demands were made of the defendant Glo-Fire Company for payment but no payments were received. About six months after the delivery of the lumber one of the partners of plaintiff company went to the place of business of defendant company and saw Mr. Camp for the first time. Camp, according to plaintiffs' evidence, at that time disputed the number of feet of lumber in the shipment, but never claimed that he did not order it. On May 17th, plaintiffs received a letter signed "Glo-Fire Company, by William Camp," stating:

"Under date of April 30, 1946, you rendered a statement to Glo-Fire Company for 47,500 board feet of ⅝-inch shimstock priced at $42.50 per M.

"Under O.P.A. regulations we are entitled to a tally sheet covering specific sizes furnished in this statement. Until we receive these tally sheets we are unable to check the number of board feet delivered from this car.

"Your attention is particularly directed to your invoice number B 12389 which specifies ⅝-inch shimstock. A large portion of this lumber was considerably under ½-inch thickness. No further action will be taken by us with reference to this account until we receive from you the tally sheets requested."

Another letter sent by defendant, dated June 5th, recites:

"Please be advised that until we receive a tally, as required by O.P.A. regulations . . . of the lumber in question we do not intend to make an adjustment of this bill."

After the receipt of defendant's letter of May 17th, plaintiffs referred the same to the company through whom they had ordered the lumber, and on May 25th, plaintiffs wrote the

defendant, quoting from the reply received by it. That letter points out that this carload was shipped from Washington and invoiced to them as $\frac{1}{4}''$ to $\frac{5}{8}''$ thick by $4''$ in width; that the specifications were according to the order; that no tally was received from the mill on the lumber and consequently that none could be delivered to defendant and that this type of lumber was never sold by tally. The testimony shows that the O.P.A. did not require a tally of this type of lumber but that the board feet could be computed from the weight of the lumber itself.

Mrs. Warfield testified that when she owned the Glo-Fire Company it was not a corporation; that prior to negotiations for the sale of her business in April, 1946, she was looking about for a carload of shimstock and requested plaintiffs to find one for her if it could be had; that she told plaintiffs she was going to sell her business and would talk to Mr. Camp about taking the lumber; that after that, while plaintiffs were endeavoring to locate the lumber for her, she entered into negotiations to sell her business to Mr. Camp; that when plaintiffs notified her they could procure the lumber she took the matter up with Mr. Camp; that she told him about these arrangements with plaintiffs and that he said he wanted the lumber because it was difficult to obtain; that she told the plaintiffs about this agreement; that Camp took over the business on April 14th and the sale was at that time in escrow and was to be completed on April 29. Mrs. Warfield's foreman continued as foreman for Mr. Camp. (Apparently Mr. Camp organized the company called Glo-Fire Corporation. Articles were completed and filed on May 10, 1946.)

F. H. Smith, one of the partners of plaintiff company, testified that Mr. Camp came to the lumber office about two months after the delivery of the lumber and he complained about the number of board feet claimed to be in the carload but did not say he had not purchased it nor that he would not be responsible for it. Plaintiffs rested their case. Motion for nonsuit was denied.

Mr. Camp then testified that about two months prior to April 15th, he discussed purchasing Mrs. Warfield's business; that about April 15th, he made the deal and gave her a check for $1,000; that about April 22d, he recalled her telling him she had ordered a carload of lumber which she could still obtain and he told her "If it was good crating lumber" he would take it; that when he went to his place of business and

discovered the lumber he ordered it out, due to its poor grade and that later he and his foreman went to plaintiffs' place of business and told them about it. He testified, however, that he later used some of the lumber by agreement with plaintiff.

Plaintiffs called a witness in rebuttal who testified that about May 1st, 1946, he approached defendant's foreman about buying all the shimstock they had at their plant; that the foreman told him they were using the lumber and sorting it and that they would sell it in about one week and if he called then they would sell it to him; that he went back at that time and bought "a pile of it," approximately 1,500 feet, for $50; that they were to deliver it in a few days; that after a month or so he talked to Camp and told him the foreman said he could not deliver it because of a mix-up in the grade; that Camp then told him he could not have any of it because it was not "even theirs"; that Camp offered him his money back but he refused because he bought that particular shimstock and wanted it; that defendant finally mailed a check to him for his $50.

Plaintiffs denied generally all of Camp's claimed conversation with them and specifically denied any agreement about defendant selling any part of the lumber for or on behalf of plaintiffs. They claimed that defendant used or sold all except two or three thousand feet of it when plaintiffs last visited defendant's place of business.

Defendant corporation advances the argument that during the period of escrow Mrs. Warfield published notice of sale of the business under section 3440, Civil Code, and since plaintiffs failed to file a claim in said escrow they are now barred from recovery against defendant. Defendant's specifications of error are that the trial court should have granted the motion for nonsuit; that the findings are contrary to the evidence and that judgment should have been in favor of defendant. The main claim is that the evidence is conclusive that there was no sale of the lumber to the defendant because the corporation was not in existence at the time of the claimed sale and that therefore there was no officer of the corporation authorized to transact business for it, citing *Judelson* v. *American Metal Bearing Co.*, 89 Cal.App.2d 256 [200 P.2d 836]; and *Robinson* v. *Chapman Square, Inc.*, 77 Cal.App.2d 902 [176 P.2d 945]. It is further contended that if plaintiff is seeking to recover by reason of a novation, it was neither pleaded nor proved as required, citing such cases as *Colley* v. *Chowchilla National Bank*, 200 Cal. 760 [255 P. 188, 52 A.L.R. 569];

*University of Redlands* v. *Ford,* 56 Cal.App.2d 151 [132 P.2d 238] ; and *Columbia Casualty Co.* v. *Lewis,* 14 Cal.App.2d 64 [57 P.2d 1010].

It is clear from the evidence that Mrs. Warfield originally intended purchasing the lumber for her business when it could be obtained; that it was on order; that at or about this time she was contemplating the sale of the business. The evidence likewise shows that she did discuss the matter with Mr. Camp, the contemplated purchaser, who agreed to accept it when it arrived. The only variance is the condition which he claims he attached to the sale, i. e., that it had to be "good crating lumber." Mrs. Warfield denied that any such conditional acceptance was made by Camp, and stated that she did not notify plaintiffs of any claimed conditional acceptance. Apparently the trial court decided this conflict, as well as the quality of the shimstock, in favor of plaintiffs. Under the well-known rule this finding will not be disturbed on appeal. (*Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301].) Mrs. Warfield told plaintiffs that she had "contacted" Mr. Camp and that he had agreed to the arrangements made by her. The evidence is that Mr. Camp's foreman was present with Mrs. Warfield in plaintiffs' place of business when this conversation took place and when the lumber was finally ordered delivered to defendant's place of business. This evidence is undisputed. The lumber was subsequently delivered to the premises where Mr. Camp was doing business and it was retained by the defendant company. Afterwards defendant used some of it and disposed of the great bulk of it by sale. Clearly, there was a liability on the part of Mr. Camp or his corporation to account for the payment.      The only question is whether the obligation assumed by Mr. Camp can be lawfully held to be the obligation of the corporation which was formed after the order was placed but before delivery of the lumber was completed. So far as plaintiffs are concerned, they were originally doing business with the Glo-Fire Company operated by Mrs. Warfield under a fictitious name. The manner in which Mr. Camp was taking title to or operating the business was not personally known to plaintiffs. The same Mr. Camp with whom they had dealt through Mrs. Warfield and the foreman was in possession of the premises when delivery was made and the record discloses that he was then president of the Glo-Fire Corporation. The record does not indicate that there were other officers or stockholders interested in it.

In support of the findings and judgment we must conclude that Mr. Camp agreed to accept the lumber for and on behalf of the corporation, when formed, without qualification. While the evidence is conflicting there is sufficient evidence to show that the defendant corporation, at least impliedly, ratified Mrs. Camp's act in agreeing to accept the lumber when delivered to the corporation, particularly where it was delivered to the premises of the corporation after it was legally formed, where it was operating and doing business, and where the corporation assumed ownership of it by using and disposing of a greater portion of the entire shipment. Apparently the trial court did not believe that the lumber was being sold by the defendant corporation for the benefit of plaintiffs, as suggested by Mr. Camp. It has been held that a contract of a stockholder or member of a corporation, individually made before incorporation, is not the contract of the corporation nor binding on it, *unless it expressly or impliedly ratifies it.* (See *Judelson* v. *American Metal Bearing Co., supra.*) ▪ A contract voidable solely for want of due consent may be ratified by a subsequent consent or by acceptance of its benefits. (*Commercial Security Co.* v. *Modesto Drug Co.,* 43 Cal. App. 162 [184 P. 964]; Civ. Code, §§ 1588-1589; 6 Cal.Jur. § 57, p. 93.) ▪ The trial court was justified in believing that the facts in the instant case brought the transaction within the exception and that the lumber was ordered by Mr. Camp or his agent in behalf of the corporation that was to be formed and that thereafter the corporation, expressly, or at least impliedly, ratified his contract. ▪ It is not expressly necessary to plead ratification. (6A Cal.Jur. § 678, p. 1189; *Zenos* v. *Britten-Cook Land etc. Co.,* 75 Cal.App. 299 [242 P. 914].) The question of lack of pleading novation, therefore, becomes unnecessary to decide.

Judgment affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied November 2, 1949, and appellant's petition for a hearing by the Supreme Court was denied December 13, 1949. Traynor, J., voted for a hearing.