[Civ. No. 1546.    Third Appellate District.—September 20, 1916.]

# E. S. BAXTER, Respondent, v. CHICO CONSTRUCTION COMPANY (a Corporation), Appellant.

Novation—Statute of Frauds—Payment for Supplies Furnished Third Person—Verbal Promise of Corporation.—A verbal promise made by the foreman of a corporation engaged in the construction of a dam that the corporation would pay for certain supplies which had been furnished to the person who had the contract for the hauling of the necessary gravel for the work, is binding on the corporation, and without the statute of frauds, where it is shown that such foreman had authority to hire and discharge men and to procure needed supplies, and that the promisee accepted the new promise and canceled the antecedent obligation.

APPEAL from a judgment of the Superior Court of Yuba County.    Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

Guy R. Kennedy, for Appellant.

W. H. Carlin, for Respondent.

BURNETT, J.—We think a rational conclusion from evidence disclosed by the record is found in the following statement of facts as claimed by respondent: Defendant had a contract for constructing within a given time a concrete dam for the impounding of water for irrigation.    It sublet to one James Kirby the work of hauling the necessary gravel to the dam site.    Defendant's headquarters were at Chico, Butte County, and the dam was being constructed some forty or fifty miles away, in the foothills of Yuba County.    Plaintiff was conducting a general merchandise store a few miles from this site.    The work was begun, and while hauling the gravel, Kirby incurred a bill at the store for the sum of $298.20 for supplies of various kinds, including groceries and a considerable quantity of beer and whisky.    Up to about October 17, 1913, defendant had been represented at this place by its superintendent or foreman, a Mr. Cuddeback, and he was succeeded by a Mr. Jack McGeehan, each of them having authority to hire and discharge men, buy necessary supplies,

incur bills in connection therewith, and represent defendant in the prosecution of the work. At said date, Mr. Kirby had a large amount of gravel on the way near plaintiff's store and plaintiff demanded the payment of his bill, refused to extend any further credit to the subcontractor, and was about to commence suit and attach the gravel. This was communicated to foreman Cuddeback, and his successor, Mr. McGeehan, took up the matter and informed plaintiff that he would communicate with the president of defendant by telephone. To plaintiff's knowledge, he did have such communication with the president, who was then at Chico, went direct to plaintiff's store, assisted plaintiff and his clerk in figuring up the amount due and unpaid, ascertained it to be $298.20, told plaintiff that in his talk with the president of defendant over the phone, the president stated that defendant would pay the bill, and McGeehan further declared that he, the foreman, would O. K. the bill, had a statement of the bill made out which he, in fact, initialed and sent to defendant at Chico, stated to plaintiff that defendant desired him to continue giving credit to Kirby, and that it would pay for all necessary articles furnished to him thereafter. Plaintiff thereupon accepted defendant's promise thus made to pay the then existing bill of $298.20, released Kirby from all claim in connection therewith, stopped the proceedings to attach, or at least abstained from any action, and looked solely thereafter to defendant for payment, and further carrying out his promise, furnished additional merchandise to Kirby in the sum of $81.20, looking to defendant alone for payment therefor.

The foregoing are the most favorable inferences in favor of the judgment that can be drawn from the evidence, but that, of course, is no objection here, if they are substantially supported at all.

The following quotation from plaintiff's testimony would seem to disclose said support: "My store is a little less than a mile from the dam. James Kirby had a subcontract from the defendant for the hauling of gravel for the construction of the dam. In doing that work, he ran a bill with me for general merchandise. Ed. Fleming was on the ground representing Mr. Kirby, and at first Pete Cuddeback was the foreman and representative of defendant, and he was succeeded by Jack McGeehan. On October 20, 1913, James Kirby owed

me $298.20, and I told his foreman, Mr. Fleming, that I wouldn't furnish any more supplies unless it was fixed up. Mr. Fleming went to Oroville, came back in a couple of days, and said Pete Cuddeback, who went to the phone and talked with Mr. Polk, the engineer for defendant in charge of the work, and after talking with him, told me to fix up the amount owed me by Kirby and send it to the defendant, and that it would be paid and defendant would be responsible for it. Then Mr. Fleming and Jack McGeehan, who was then foreman and representative of the defendant, took my books, added up the account, which came to $298.20, and made out the statement introduced in evidence themselves, and Jack McGeehan took it, saying that he would O. K. it and send it to the defendant. I then and there accepted this promise on behalf of defendant and I released James Kirby, canceled his indebtedness, and from this time on looked to the defendant alone for the payment of this bill. As a further inducement and consideration to defendant for assuming this bill, I promised Jack McGeehan that I would go ahead and let Kirby have thereafter anything that was necessary to complete the contract, which Mr. McGeehan, for defendant, asked me to do and stated the defendant would pay the same. Had not defendant assumed the prior account, I would not have done this, as I was going to attach, but having obtained this promise from the company, I released Mr. Kirby and then furnished additional supplies to Mr. Kirby thereafter in accordance with the direction obtained from Mr. McGeehan, amounting to $81.20."

There is thus shown a novation, and it is excepted from the operation of the statute of frauds by virtue of subdivision 3 of section 2794 of the Civil Code, excluding the case "where the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it cancels the antecedent obligation, accepting the new promise as a substitute therefor," etc.

We can see no valid objection to the course permitting plaintiff to testify that he did cancel the antecedent obligation and accepted the new promise. These were facts, and no one was better qualified than plaintiff to testify concerning them. The court would not be bound by his declaration to that effect, but they constituted evidence which we cannot say was insufficient to support the court's finding.

We think, also, that there was sufficient showing that the foreman or superintendent had authority to bind the company in the promise to pay for the supplies.

There is no dispute that Cuddeback and McGeehan had the same authority, and the former testified that: "My authority was to go ahead with the construction of the dam, hire men, discharge them, buy what supplies were needed for the work." Mr. Fleming also testified that Mr. McGeehan was general foreman for the Chico Construction Company, that "he hired and discharged laborers and supervised the work and ordered supplies."

There is also strong circumstantial evidence in the fact that McGeehan, immediately after telephoning to the president of said company, made said agreement with plaintiff. He would quite naturally repeat to plaintiff what was said to him by his superior. It is altogether improbable that he would immediately make a contract entirely different from his instructions. It is true that there is a difference between the testimony of plaintiff and McGeehan as to this, but we must accept the version of the former.

The proposition involved in the case seems simple, and, as we cannot say that the conclusion drawn from the evidence by the trial judge is unreasonable or unsupported, we think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.