[Civ. No. 7442. First Appellate District, Division Two.—November 10, 1930.]

ERI H. RICHARDSON, Appellant, v. JAMES W. HISLOP et al., Respondents.

Frederick W. Kant and Warren H. Pillsbury for Appellant.

T. H. DeLap, Tinning & DeLap and Hiram E. Jacobs for Respondents.

BURROUGHS, J., *pro tem.*—On July 14, 1922, the plaintiff Eri H. Richardson and the defendants James W. Hislop and A. C. Myers entered into an agreement of partnership under the name of Clay Glow Tile Company by which

they agreed to engage in the business of buying, selling and retailing goods, wares and merchandise for cash, on a commission basis or otherwise, but more especially to deal in clay and tile products, including terra cotta and ornamental tile of all descriptions; together with any other articles or products appertaining or belonging thereto.

The partnership was to continue for one year unless sooner terminated as provided in said agreement and hereinafter set forth. It was further agreed that the capital stock of said copartnership was $1000, to be subscribed for and distributed as follows: Eri H. Richardson, sixty per cent; James W. Hislop, twenty per cent; A. C. Myers, twenty per cent. It was further provided that Richardson should be the manager of the business and should do his best to dispose of the entire output of a certain clay and tile plant, said output to be contracted for with James W. Hislop, A. C. Myers, W. A. Hislop, L. J. Hislop and C. E. Cummings, a partnership doing business under the firm name of Hislop & Myers. It was further provided that Richardson's services above referred to were to supervise the architectural arrangement, drafting and color arrangement of tiles. It was also provided that compensation was to be arranged with Richardson for any special designs of fountains, fireplaces or other special lay-outs. If the use of any special design was granted without charge by Richardson, it was understood that such special design, also the models, moulds and dies were to become the property of Richardson in consideration of such use and were to be delivered to the latter upon demand by him, and that the Clay Glow Tile Company should market and dispose of the clay and the other products contracted for with Hislop & Myers on a margin of gross profit of twenty-five per cent. It was also agreed that in addition to the sixty per cent interest owned by Richardson in said business he should receive a salary equal to ten per cent of the twenty-five per cent gross profit to be made by the partnership firm on the clay and tile products purchased under the contract to be made with Hislop & Myers.

The partnership of Clay Glow Tile Company should continue from year to year unless sixty days before the beginning of the new year one of the partners should give notice

in writing to the other partners of a desire to terminate the same.

It was also agreed that the interest of James W. Hislop and A. C. Myers was in reality their interest in the copartnership of Hislop & Myers, the copartnership hereinbefore referred to. On the same day Eri H. Richardson, James W. Hislop and A. C. Myers as copartners, under the name of Clay Glow Tile Company, hereinafter called the "purchasers" and James W. Hislop, A. C. Myers, W. A. Hislop, L. J. Hislop and C. E. Cummings, copartners, doing business under the firm name of Hislop & Myers, hereinafter called "sellers", entered into an agreement, hereinafter referred to as "the selling contract", wherein it was recited that it was an exclusive contract between the parties and was to cover the "Western States of America and Hawaii", that it was an exclusive contract for the entire output of said sellers' plant, within said territory. It was further provided that all material embraced by said agreement should bear the trade name Clay Glow Tile Company or any other name or mark furnished by the purchasers and none other. It was also agreed that all designs furnished by the purchasers to the sellers and all models and moulds made from designs belonging to the purchasers, should at all times be and remain the property of the purchasers. Other provisions of the selling agreement will be hereinafter referred to.

On February 26, 1923, E. H. Richardson and Hislop & Myers entered into an agreement, hereinafter called the closing agreement, by the terms of which the firm of Hislop & Myers sold to said Richardson all their right, title and interest in the Clay Glow Tile Company and all assets thereof, which included the twenty-five per cent discounts from dealers' prices on all sales made, and all orders dated up to March 1, 1923, and agreed to deliver to Richardson any and all assets within their possession or in the possession of the firm known as Hislop & Myers. Hislop & Myers also agreed to take the new Ford coupe and pay the amounts so far invested by Clay Glow Tile Company, and to pay all amounts still due thereon. Hislop & Myers also agreed to deliver to E. H. Richardson, or order, tiles at Clay Glow's net prices for the sum of $500 advanced to them by Clay Glow Tile Company, or the same could be

deducted, together with any other amounts due Clay Glow Tile Company, from any outstanding amounts due them from the Clay Glow Tile Company. It was further provided that upon the completion of such payments and deliveries, E. H. Richardson was to pay to Hislop & Myers the balance due them by sixty days acceptance, whereupon E. H. Richardson would and did release them to sell their wares to any and all dealers or to other persons without any claim whatever. Upon completion of the above deliveries and payments that contract dated July 14, 1922, "will become null and void".

The second amended complaint upon which the cause was tried contains four separate counts. So far as necessary to an understanding and decision of this case, it is alleged therein that up to and including the date of the closing contract, the defendants had rendered a full and true account to the Clay Glow Tile Company, in accordance with the terms of the sellers' agreement above referred to and have received all sums of money due to the Clay Glow Tile Company, therein provided. But from and after said date defendants have refused to render said accounts or make any payments thereunder, although they have continuously made clay and tile products at their plant and sold the same. It is then alleged that defendants have violated the terms of the closing agreement in that they had in their possession under the sellers' agreement, divers and sundry properties and assets of the Clay Glow Tile Company, including numerous designs furnished by plaintiff Richardson to the Clay Glow Tile Company, for the use of Hislop & Myers, and models and moulds made therefrom, all of which were then and there the property of plaintiff Richardson and said Clay Glow Tile Company. That defendants failed and refused to return to plaintiff, as required by the closing agreement, said property and although frequent demand has been made therefor, defendants have refused to return the same and still retain them in their possession. It is alleged that because of the defendants' failure to return said property the sellers' agreement is still in full force and effect. It is further alleged that since February 26, 1923, the date of the making of the closing agreement, there has become due to plaintiff as commission in accordance with

the terms of the sellers' agreement, $200,000, no part of which has been paid.

A second cause of action is based upon the original partnership between Eri H. Richardson, James W. Hislop and A. C. Myers in that by virtue of his interest in the Clay Glow Tile Company, Eri H. Richardson is entitled to sixty per cent and a salary equal to ten per cent of the gross profits accruing to said partnership, Clay Glow Tile Company from the sellers' contract. It is further alleged that under said sellers' agreement he is entitled to $200,000 commissions and that he has been damaged to the extent of his interest in the Clay Glow Tile Company to the extent of $140,000. The third cause of action has been abandoned.

As a fourth cause of action it is alleged that by reason of the failure of the defendants to deliver to Eri H. Richardson special designs, models and moulds made in accordance with the terms of the sellers' agreement, and not delivered to Richardson in accordance with the terms of the closing agreement, and which the defendants have continued to use since February 26, 1923, that the use thereof was and is of the value of $200,000. They also pray for a return of the models.

By answer the defendants deny the material allegation of the complaint wherein it is alleged that the defendants have violated any of the terms of the several contracts. They also allege that the defendant California Art Tile Company is a corporation and the successor in interest of Hislop & Myers. They also plead laches and estoppel as a defense. A counterclaim in the amount of $562.02 upon an open book account is alleged. There is a supplemental complaint based upon the same causes of action in the sum of $20,000 alleged to be due under the sellers' contract, since the filing of the complaint. The allegations of this supplemental complaint are denied by defendants.

The court found that all four causes of action and also the cause of action set forth in the supplemental complaint arose out of the same series of transactions and that the subject matter is the same; that the first cause of action based on the sellers' agreement above referred to was abrogated by the closing agreement of February 26, 1923; that the original contract of partnership was also terminated by the same agreement; that after the day when the closing agree-

ment was signed neither the Clay Glow Tile Company nor
Eri H. Richardson at any time made any effort to sell any
of the products of Hislop & Myers or their successors, the
California Art Tile Company, nor did they or either of them
maintain any office or salesmen for that purpose, nor did
they or either of them thereafter offer to buy any products
made by the defendants; that immediately after February
26, 1923, the defendant California Art Tile Company organ-
ized its own sales force and through this agency alone were
its products sold; that the California Art Tile Company
(also Hislop & Myers) performed all the conditions of the
closing agreement except that it did not return to Eri H.
Richardson certain moulds that were in the possession of
the California Art Tile Company at the time the closing
agreement was executed; that after signing said last-named
agreement Eri H. Richardson kept and retained the twenty-
five per cent discount referred to in the closing agreement,
amounting in all to the sum of $1,800 and received from
the California Art Tile Company tiles at Clay Glow net
prices, as provided for in the closing agreement; that E. H.
Richardson has never returned nor offered to return to the
California Art Tile Company any of the property received
or retained by him under the said agreement, and has never
demanded the return of the moulds or any other property of
his in the possession of the California Art Tile Company,
but said Richardson did at various times after the execution
of the closing agreement demand that the California Art
Tile Company pay him for the use of said moulds and certain
models and designs which he claimed were in their posses-
sion. Nor did Richardson before commencing this action
notify defendants that the sellers' agreement was in effect,
except that he at all times notified them that they had cer-
tain models, moulds and designs in their possession by virtue
of the closing agreement and demanded compensation for
their use; that after February 26, 1923, defendants did
not have in their possession any designs or models or any
other property belonging to plaintiff except certain moulds
hereinafter referred to.

The court also found that the plaintiff was by his conduct
estopped to deny the force and effect of the closing contract;
that he was also guilty of laches in bringing the action. The
court further found that certain moulds belonging to Rich-

ardson under the terms of the closing agreement were retained by the defendants; that their use to the California Art Tile Company was worth the sum of $727, which was the greatest value to plaintiff or to any other person or concern for any purpose whatever. That the closing agreement had been substantially performed by both parties, except that defendants failed to deliver said moulds for which failure plaintiff could be adequately compensated in damages. It was also found that the California Art Tile Company was entitled to recover $510 on its counterclaim, and it was adjudged that plaintiff recover $217. The plaintiff appeals from the judgment.

Appellant claims that the respondents failed to comply with the provisions of the closing agreement and therefore the sales contract is in full force and effect and that appellant is entitled to recover all sums which would have been due him as though there had never been any attempt to terminate the sales contract and both parties had fully complied with its terms. The court found that the sales agreement had been abrogated by the closing agreement; that the latter had been substantially performed, but that the California Art Tile Company, the successor of Hislop & Myers, had not returned to appellant certain moulds that were in its possession at the time of the execution of the closing agreement; that no demand had been made upon the defendants for the return of said property to the plaintiff; that the value of the use of said moulds could be readily compensated by a money judgment; that the value of the use of said moulds was $727. The court also found that the partnership agreement between Eri H. Richardson, James W. Hislop and A. C. Myers was terminated by the closing agreement. These findings of the court are all attacked upon the ground that they are not sustained by the evidence. The evidence shows without conflict that under the closing agreement appellant received $1800 for the assets of the Clay Glow Tile Company, provided for in the first paragraph of said agreement; that the defendants took the Ford coupe and paid to appellant all sums invested in said automobile and made all subsequent payments and all further sums remaining due on said coupe, all as provided in the second paragraph of said agreement. That defendants also delivered to appellant tiles at Clay Glow's net prices

for the sum of $500 advanced to them by Clay Glow Tile Company, all as provided in the third paragraph of said agreement. The dispute between the parties rests upon the alleged failure of the defendants to return to appellant certain designs, models and moulds in accordance with the provisions of the selling agreement. Appellant claims he is entitled to damages for their use by the defendants. Upon this subject the evidence of William Hislop is to the effect that the models made from Richardson's designs were made into moulds and the moulds were worn out and replaced before the signing of the closing agreement; that the defendants had no original designs prepared by Richardson; that they had models prepared from his designs which were always destroyed in the making of the first mould. The witness never saw any of Richardson's designs that had not been made into moulds before February 26, 1923. So far as the witness knew there were none. He was the person who had the matter in charge. The appellant testified that the cost of making the ordinary moulds was from three to five or six dollars. A. C. Myers testified that a mould of the seal heads cost eight or nine dollars. Will Hislop testified they had about seventy moulds. The court found that appellant was entitled to recover for the use of all the moulds, $727. A. Clay Myers testified the appellant did not ask that defendants return any designs, models or moulds, but he claimed he was entitled to pay for their use by the defendants. The same witness testified that appellant never offered to assume the burdens imposed upon him by the selling agreement.

There is further evidence to sustain the findings of the court and there is also evidence which raises a conflict, but we are not concerned with the weight of the evidence, that having been resolved by the trial court.

It is claimed by appellant that where a controversy is intended to be settled by a closing agreement, and this closing agreement is violated by one party, the other party has a right to elect to sue for the breach of the closing agreement or to sue upon the original contract or claim, and he cites as the leading case thereon *Sheeline* v. *Moshier*, 172 Cal. 565 [158 Pac. 222, 224]. However, we are of the opinion that the case cited is not in point. When the closing

agreement was entered into, according to plaintiff's complaint, there was no controversy between the parties, the complaint itself alleges that all claims and accounts were settled in full at the time the closing agreement was executed. In the case of *Sheeline* v. *Moshier, supra,* an action was pending to collect an amount claimed to be due on a promissory note. A stipulation was filed whereby plaintiff agreed to take an amount less than actually due on the note, payable in installments on specified dates, with the provision that if default were made plaintiff might take judgment for the full amount of the note. It was held that as default had been made the plaintiff was entitled to maintain another action on the original note. The court says: "It was by its terms made conditional. The acceptance of one thousand five hundred dollars (less than the sum admitted to be due) was to take place 'providing' the payment thereof was made in the 'manner' therein specified, not otherwise . . . Upon failure to pay any installment at the stated time, the condition failed . . . "

In the case at bar the closing agreement recites that in consideration of $10 and "the following mutual covenants and agreements", then follows a recitation of the covenants to be performed by each one of the parties and a further covenant that upon the performance thereof, Richardson will and does release defendants to sell their wares to other dealers or other persons without hindrance or claim, and upon completion of said deliveries and payments the contract dated July 14, 1922, will become null and void. In Williston on Contracts, section 671, page 1294, it is held that "Courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed. The reason of this disinclination is that such a construction prevents the court from dealing out justice to the parties according to the equities of the case." In the same volume, section 665, page 1282, it is said, "As a matter of construction, it seems better to favor bilateral contracts than unilateral, and in bilateral contracts better, where the meaning of the agreement is doubtful, to construe words as involving a promise by the party who is expected to do the act in question than as words of condition. Such a construction protects both

parties to the transaction, and also does not involve the consequences that a slight failure to perform wholly destroys all rights under the contract. The law recognizes the propriety of this rule of construction. . . . Especially words appropriate for condition have not been given their natural meaning where the consequence would lead to injustice, and a violation of the probable intent of the parties."

In *Antonelle* v. *Lumber Co.*, 140 Cal. 309, at page 318 [73 Pac. 966, 969], it is said: "we are satisfied, that the stipulations of the parties in the contract upon this whole subject, were not conditions precedent, but, in effect, simply covenants. As said by Parsons, 'Words of proviso and condition will be construed into words of covenant, when such is the apparent intent and meaning of the parties. . . . The whole context also of the document is to be considered. . . . The construction depends upon the intention of the parties, to be collected in each particular case from the terms of the agreement itself, and from the subject matter to which it relates. Whether a provision in a contract is a stipulation . . . or a condition . . . is to be gathered from the whole document (Wharton on Contracts), sec. 555.' " The following cases also pertain to the same point: *Green Co.* v. *Quinlan*, 211 U. S. 582 [53 L. Ed. 335, 29 Sup. Ct. Rep. 162] ; *Kauffman* v. *Raeder*, 47 C. C. A. 278 [108 Fed. 171, 54 L. R. A. 247] ; *First Nat. Bank* v. *Bowers*, 141 Cal. 253, 262 [74 Pac 856].

█ The evidence discloses that the respondents were endeavoring to terminate the selling agreement, this was testified to by appellant and respondents alike. At the time of the execution of the closing agreement, there was no dispute between the parties, all obligations on both sides had been fulfilled. The closing agreement fixes no dates when payments were to be made or goods delivered. It contemplated an immediate fulfillment of its terms. We are of the opinion that notwithstanding the language of the last two paragraphs of the closing agreement said closing agreement constitutes a "novation". █ Section 1530 of the Civil Code defines a novation as a substitution of a new obligation for an existing one. Section 1531 of the Civil Code provides that a novation is made "By the substitution of a new obligation between the same parties, with intent to extin-

guish the old obligation." In *Beckwith* v. *Sheldon et al.*, 165 Cal. 139 [131 Pac. 1049], it is held that where there has been a novation the original contract is not revived by a breach of the new one. Before recovery could be had on the old contract the party must rescind and must as a condition place the other party *in statu quo.* In the instant case no such attempt has been made. The contention of the appellant is not well founded.

Defendants plead estoppel. This plea is sustained by the following evidence. The agreement of partnership between Eri H. Richardson, J. W. Hislop and A. C. Myers (exhibit A), and the sellers' agreement were executed on July 14, 1922, and were acted upon by both parties until February 26, 1923, when said agreements were superseded by the closing agreement. It was well known to plaintiff that the defendants were seeking an abrogation of the contracts. Upon the execution of the closing agreement the defendants reorganized the business, established their own sales agency, and continued manufacturing clay products. Their business increased from a very small amount previous to the execution of the closing agreement to nearly a quarter of a million dollars in 1925. The appellant was among their customers. According to the testimony of the defendants, plaintiff never hinted or suggested that the sales agreement was still in force. Under the sales agreement the plaintiff was obligated to organize and maintain a sales force to sell the entire output of defendants' factory. None of these things was ever done or attempted to be done after the closing agreement. Plaintiff also received from defendants the balance due on the Ford automobile. He received $1800 in cash, profits made by Clay Glow Tile Company, up to February 26, 1923, and $500 worth of the products of respondents' plant owing Clay Glow Tile Company and has retained all these benefits.

We think under these circumstances he is now estopped to claim the benefit of defendants' skill and labor. (10 Cal. Jur., sec. 14, p. 626; *Carpy* v. *Dowdell,* 115 Cal. 677 [47 Pac. 695]; sec. 1963, subd. 3, Code Civ. Proc.; 10 Cal. Jur., sec. 18, pp. 633, 634.)

It is also contended that under the fourth count of the complaint the plaintiff was entitled to damages for the retention and continued use by defendants of plaintiff's

designs, models and moulds; that the designs which were made by him had a particular value as the product of the mind, and a measure of damage equal only to the cost of production of the design is far less than its real value.

The court awarded plaintiff $727 as damages under this count. The appellant had not copyrighted any of the designs. All of them had been published before February 26, 1923. We are, therefore, satisfied that the case comes within the provisions of sections 980 and 983 of the Civil Code. Section 980 provides, "The author of any product of the mind, . . . has an exclusive ownership therein, . . . which continues so long as the product and the representations or expressions thereof made by him remain in his possession." Section 983 provides, "If the owner of a product of the mind intentionally makes it public, a copy or reproduction may be made public by any person, without responsibility to the owner, so far as the law of this state is concerned."

In *State* v. *State Journal Co.*, (Neb.) 106 N. W. 434 [9 L. R. A. (N. S.), p. 174], it is held that it is only through the provisions of the copyright law that the work of authors, designers and inventors can be protected as their individual property. In the instant case it is argued by counsel for appellant that the relation between plaintiff and defendant, is a contractual one and does not arise from the law last cited. However, we have already held that the other contracts were superseded by the closing contract, and, therefore, the rule of law above stated is applicable here. ▮ Complaint is made of the court's refusal to admit evidence to establish the value of the use of the plaintiff's designs. The court allowed evidence and awarded damages for the reproduction cost, but sustained the objection made because plaintiff had no property right in such noncopyrighted designs. We think the court was right in its ruling under the authorities last above cited.

We are of the opinion that no useful purpose would be served in further discussion of the case. Under the holding of this court on the several points passed upon, the judgment must be affirmed.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 10, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 8, 1931.