[S. F. No. 18210. In Bank. Oct. 26, 1951.]

CHARLES N. ALEXANDER et al., Appellants, v. JOHN
B. ANGEL, Respondent.

Nathan Goldwater and John L. McVey for Appellants.

Donahue, Richards, Rowell & Gallagher and George W. Hauer for Respondent.

SPENCE, J.—Plaintiffs Alexander brought this action to foreclose a chattel mortgage given as security for $4,300, the amount of two promissory notes. Defendant Angel admitted execution of the notes in his answer but as an affirmative defense and also by cross-complaint, he alleged his conveyance of the property to Robert J. Haws and Zada M. Haws and their (the Hawses') entry into a separate agreement with plaintiffs whereby they, as his vendees, assumed his obligation and he was released from all liability therefor— in effect, a pleading of novation. Both plaintiffs and the Hawses were named as cross-defendants, and in his cross-complaint, defendant and cross-complainant Angel sought a declaration of the rights and duties of all the parties concerned in the respective transactions. Cross-defendants Hawses failed to file an answer and their default was entered; but Mr. Haws did participate in the trial as a witness. The trial court made findings sustaining defendant and cross-complainant Angel's claim of a novation and from the judgment accordingly entered in his favor, plaintiffs Alexander appeal.

As ground for reversal, appellants contend that the evidence was insufficient to support the findings on the contested issue of a novation. But the record appears to present the usual case of opposing evidentiary considerations, and so applicable is "the time honored rule that all substantial conflicts must be resolved in favor of the respondent, and *all legitimate and reasonable inferences indulged in to uphold the findings if possible.*" (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593] ; italics added.) Accordingly, appellants cannot prevail.

On January 2, 1947, appellants Alexander sold a fountain lunch and restaurant to respondent Angel. The latter on that date executed in favor of appellants two promissory notes secured by a chattel mortgage on the business fixtures. The notes were for $2,150 each, due one year and two years, respectively, after the date of execution—January 2, 1948, and January 2, 1949; and neither bore interest. In September, 1947, and prior to the maturity date of either of the notes, respondent entered into negotiations for the sale of his business to cross-defendants Hawses. Shortly before consummation of the sale and on October 28, 1947, the Alexanders and the Hawses executed a written agreement, which read as follows:

"In consideration of the forbearance of Charles N. Alexander and Katherine J. Alexander in asserting their right

to payment of the sum of $2150, due and payable January 2, 1948, pursuant to that certain promissory note, made and executed by John B. Angel on January 2, 1947, and payment of the sum of $2150, due and payable on January 1, 1949 . . . both of which notes are secured by a chattel mortgage on fixtures and equipment now located in that certain storeroom commonly known and designated as 3421 Fruitvale Avenue, Oakland, we, the undersigned, purchasers and assignees of Angel's Fountain Lunch, formerly known as the Dimond Pastime, located at 3421 Fruitvale Avenue, Oakland, California, hereby agree to make monthly payments in the sum of $150.00 to include interest at the rate of six (6) per cent per annum. We hereby agree to make said payments on the 28 day of each month commencing on the 28 day of October, 1947, until the full amount of the principal of $4300 is paid.

"In event, however, said payments as aforesaid are not made in the manner as hereinbefore provided, then Charles N. Alexander and/or Katherine J. Alexander . . . may, at their option, declare the full amount to be due and payable. In such event said payments are not made, we, the undersigned, hereby agree to pay all court costs made necessary in the collection of these notes and such attorney fees as the court may determine."

The Hawses made eight payments to appellants, amounting to $636.06, the first ($127.50) on October 28, 1947, and the last on November 24, 1948. No demand was made on respondent for payment until January, 1949, at the time the second note became due, when a formal demand was made on both notes before appellants instituted this action.

The trial court specifically found that "at the time of the execution of the written agreement of October 28, 1947, it was the intent of all the parties thereto, said parties being the plaintiffs and cross-defendants Charles N. Alexander and Katherine J. Alexander, and Robert J. Haws and Zada M. Haws, cross-defendants, to entirely extinguish and abrogate the agreements of January 2, 1947, between the Alexanders and John B. Angel, and to substitute in the place of such agreements of January 2, 1947, the said agreement of October 28, 1947; that . . . further . . . at the time of said agreement of October 28, 1947, it was the intent of the parties to said agreement to substitute a new debtor, namely, Robert J. Haws, in the place and stead of the old debtor, John B. Angel, defendant and cross-complainant herein; that . . .

further . . . at [said] time . . . it' was the intent of the parties . . . to release defendant and cross-complainant John B. Angel of any and all liability to the plaintiffs and cross-defendants herein, under the agreements of January 2, 1947; that . . . the said intention of the parties to the said agreement of October 28, 1947, is evidenced by the language of and by the actions of the said parties subsequent to the execution of the said agreement.'' Consistent with such determination of the rights and duties of the parties here in dispute, the trial court concluded that the effect of the agreement of October 28, 1947, between the Alexanders and the Hawses was ''a novation, so as to substitute the obligations of [the Hawses], thereby assumed by them, for the obligation of John B. Angel which arose by virtue of the agreements of January 2, 1947,'' between Angel and the Alexanders; that ''the effect of such novation was the substitution. of a new debtor, namely, [the Hawses], in the place and stead of the old debtor, namely, John B. Angel,'' that ''as a result of the said novation . . . Angel [was] not indebted to the . . . Alexanders . . . in any sum at all.'' Accordingly, judgment was entered denying the Alexanders recovery from Angel.

A ''novation is the substitution of a new obligation for an existing one.'' (Civ. Code, § 1530.) One of the ways a novation may be consummated is ''by the substitution of a new debtor in place of the old one, with intent to release the latter.'' (Civ. Code, § 1531.) Novation must be pleaded either expressly or ''by unequivocal implication,'' and the burden of proof is ''upon the party asserting its existence.'' (*Colley* v. *Chowchilla Nat. Bank*, 200 Cal. 760, 770 [255 P. 188, 52 A.L.R. 569]; also 66 C.J.S. § 25a, p. 712; § 26b, p. 714.) The ''question whether a novation has taken place is always one of intention'' (*Producers Fruit Co.* v. *Goddard*, 75 Cal.App. 737, 755 [243 P. 686]), with the controlling factor being the intent of the obligee to effect a release of the original obligor on his obligation under the original agreement. (*Ayoob* v. *Ayoob*, 74 Cal.App.2d 236, 251 [168 P.2d 462].) While the evidence in support of a novation must be ''clear and convincing'' (*Columbia Casualty Co.* v. *Lewis*, 14 Cal.App.2d 64, 72 [57 P.2d 1010]), the ''whole question is one of fact and depends upon all the facts and circumstances of the particular case'' (*Manfre* v. *Sharp*, 210 Cal. 479, 481 [292 P. 465]), with the weight and sufficiency of the proof being matters for the determination of the trier of the facts under the general rules applicable

to civil actions. (66 C.J.S. § 26d, p. 716; § 27a, p. 718; *Producers Fruit Co.* v. *Goddard, supra,* 75 Cal.App. 737, 755.) ▇ In line with these observations and the further principle above noted that "all legitimate and reasonable inferences [must be] indulged in to uphold the findings if possible" (*Richter* v. *Walker, supra,* 36 Cal.2d 634, 640), it must be concluded that the record contains ample evidence in support of the trial court's finding of a novation here.

First, there is the matter of the purport of the agreement between the Alexanders and the Hawses in extinguishment of the original obligation of respondent Angel to the Alexanders. Except for similarity in the stated amount of the indebtedness, $4,300, the respective obligations reflect differentiating features: (1) the Hawses' agreement provided for monthly payments of $150 commencing on the date of its execution, October 28, 1947, until the principal was paid—an entirely different method of payment from that provided in the original notes respectively due on January 2, 1948, and January 2, 1949, each in the sum of $2,150; (2) the Hawses' agreement provided for interest payments, while the notes had no such provision; and (3) the Hawses' agreement contained an acceleration clause in the event of nonpayment of any of the monthly amounts, again a provision not contained in the notes. These distinguishing factors indicate not merely the assumption of a preexisting obligation but the consummation of an entirely new agreement in relation to a mortgage debt, new as to parties and new as to obligation.

▇ Such drastic changes in a mortgage debt assumed by purchasers from the mortgagor would require the latter's consent in order to prevent his exoneration from liability as surety on the obligation. (Civ. Code, § 2819; *Braun* v. *Crew,* 183 Cal. 728, 731 [192 P. 531].) ▇ So significant here is the fact that upon the execution of the Hawses' agreement, prepared by appellants' counsel, appellants admittedly made no attempt to contact respondent Angel or secure his consent to the material changes made in the terms of the obligation —a course of procedure which would indicate that they no longer considered respondent Angel liable on the new undertaking with the Hawses, but rather that he thereupon stepped "out of the picture." Corroborating that intent on the part of appellants are the circumstances of the payments made by the Hawses under their agreement. While that agreement called for monthly payments of $150, they made only eight payments (the first $127.50, the other individual amounts not

appearing) for the total sum of $636.06, the first as of the date of execution of the agreement, October 28, 1947, and the last on November 24, 1948. Thus over a 13-month period there was paid approximately only one-third of the amount owing. Yet with the arrearage so accumulating, appellants made no demand upon respondent Angel until January, 1949, when *both* of the original notes were presented to him before commencement of this action—though the first note, if still in effect, was due January 2, 1948.

Likewise pertinent to the purport of the new agreement are the views of the parties as expressed at the trial. Mr. Haws testified that he was to pay off the amount of the notes executed by respondent Angel as part of the purchase price of the business. Appellant Alexander admitted receiving the payments under the agreement from the Hawses; that the agreement was executed a few days before the property was sold by respondent Angel to the Hawses; that he did not at any time discuss the agreement with respondent Angel but dealt solely with a Mr. Fox, respondent's real estate agent; and that the agreement was executed because Mr. Haws "didn't want to risk his money with the possibility of foreclosure against Mr. Angel three or four months after the deal was made," pursuant to the date of the first note held against respondent Angel, January 2, 1948. Respondent Angel testified that he first learned of the agreement between the Hawses and Alexanders about the time the sale was made but that he did not remember actually seeing it until about the time of the commencement of this action; and that he paid nothing on the note, assuming that Haws "was making the payments as he had agreed with Mr. Alexander."

 Where it "satisfactorily appears that a new agreement was intended by the parties to take the place of an existing one," as is the case here since the parties proceeded to act for some 15 months in reliance solely on the substituted agreement, "it necessarily follows that the old agreement has been entirely abrogated or extinguished." (*Producers Fruit Co.* v. *Goddard, supra,* 75 Cal.App. 737, 755.) In consequence of such novation, the rights and duties of the parties must be governed by the new agreement alone, and "a failure to perform [thereunder] does not, under any theory of rescission or revivor, operate to breathe new life into the dead and extinguished obligation." (*Beckwith* v. *Sheldon,* 165 Cal. 319, 324 [131 P. 1049]; *Producers Fruit Co.* v. *Goddard, supra,* 75 Cal.App. 737, 756; also 66 C.J.S.

§ 22, p. 710; 4 Cal.Jur. § 4, p. 250; *Murphy* v. *White,* 101 Cal.App. 719, 722 [282 P. 427]; *Richardson* v. *Hislop,* 109 Cal.App. 440, 451 [293 P. 168].)

It is true that there is some conflict in the record on the novation issue. Thus there is the testimony of appellant Alexander that when he received the payments from the Hawses, he understood that they were to "be applied on Angel's [first] note"; and that while no demand was ever made upon him for the notes executed by respondent Angel, he did tell "Mr. Fox [respondent's agent] that those notes would be held and [he] could not release [them] under any circumstances." Mr. Fox was not called as a witness. Likewise appellants cite the provision in the Hawses' agreement for the payment of court costs and attorney fees as "necessary in the collection of [the] notes," and argue that if a novation had been intended there would be no notes to collect, as any action would necessarily be upon the later agreement. In answer to this point, respondent Angel refers to the express allowance for the payment of such items in the original chattel mortgage, and he maintains that if the new agreement had not been intended as a substitute therefor, the provision for costs and attorney fees incident to the collection process would have been mere surplusage. These were all opposing considerations for the trial court in resolving the disputed issue at hand. Suffice it to say in this regard that from the language of the Hawses' agreement itself, as well as from consideration of the subsequent acts of all the parties here involved, the trial court could reasonably infer that there was intended the substitution of a new obligation for the existing one.

As a final point of argument, appellants stress the fact that respondent Angel was not a party to the Hawses' agreement. In this regard they refer to the general statement found in the discussion of a novation that the assent of all parties is necessary. (20 Cal.Jur. § 3, p. 248.) However, such a broad generalization must be examined in the light of the various situations that may arise. Certainly no new debtor can be bound without his assent (*Colley* v. *Chowchilla Nat. Bank, supra,* 200 Cal. 760, 771), and no old debtor can be discharged without the creditor's consent. (*Carpy* v. *Dowdell,* 131 Cal. 495, 498 [63 P. 778]; *Manfre* v. *Sharp, supra,* 210 Cal. 479, 482; *University of Redlands* v. *Ford,* 56 Cal.App. 2d 151, 152 [132 P.2d 238]; see, also, 66 C.J.S. § 18b, pp. 700-701.) But wholly different considerations are presented

where there is an agreement between the creditor and the new debtor, and the assent of the original debtor is not universally necessary to produce in effect the liability of a new debtor and the discharge of the original debtor. (Williston on Contracts, rev. ed., vol. VI, § 1870, pp. 5254-5255.) In fact, in such type of novation, since it is presumably beneficial to the original debtor, no mention need even be made of the matter of his consent (*Baxter* v. *Chico Construction Co.,* 31 Cal.App. 492, 493-494 [160 P. 1084]; *First National Bank* v. *Kinslow,* 2 Cal.App.2d 456, 457-458 [38 P.2d 163]), inasmuch as it may properly be assumed that he consents to the discharge although he still has a right of disclaimer. (Restatement of Contracts, Vol. II, § 427, p. 803.) Such is the case here upon the record's showing of facts and circumstances from which it could reasonably be inferred that a novation was intended at the time of the execution of the agreement between appellant and the Hawses (*Murphy* v. *White, supra,* 101 Cal.App. 719, 722; see *Silva* v. *Providence Hospital of Oakland,* 14 Cal.2d 762, 773 [97 P.2d 798]; *F. I. Somers & Sons* v. *Le Clerc,* 110 Vt. 408 [8 A.2d 663, 665, 124 A.L.R. 1494], anno. 124 A.L.R. 1498, 1503), and the factor of respondent Angel's consent thereto is not a matter of doubt in view of his reliance upon such agreement to effect his discharge from his prior obligation to appellants.

Likewise without merit is appellants' objection to the sufficiency of respondent's pleading of a novation because there is no allegation of the consent of all the parties involved. In this connection they cite the case of *Garthofner* v. *Edmonds,* 74 Cal.App.2d 15 [167 P.2d 789], where a widow's agreement to pay a former obligation of herself and her deceased husband was held to be unenforceable, inasmuch as she was already obligated to pay the debt, and so there was a lack of consideration to support the later agreement. (P. 19.) But in so holding, the court also discussed the purport of the successive dealings of the parties and declared that since at the time of the alleged later agreement, the husband, "one of the obligors of the original debt, was then dead," he "did not and could not consent to" the new arrangement and accordingly, a valid novation was not effected. (P. 20.) Such conclusion rests on unrealistic considerations with respect to the particular facts involved on the question of mutuality of consent, and it must be disapproved as applied to that type of novation where, as here, there is the substitution of a new debtor for the old, pursuant to the former's agreement with

the creditor; and the assent of the original debtor to an arrangement for his discharge from his prior obligation, so obviously to his advantage, should be presumed or dispensed with unless he affirmatively disclaims such benefit. Accordingly, the failure of respondent Angel to allege his consent to the Hawses' agreement does not invalidate the pleading of his claim that he was thereby released "from any and all liability" under his notes and effectively discharged from his previous obligation. Rather the issue of novation was squarely presented by the pleadings, the case was tried on that single proposition, and the record as above reviewed contains substantial evidence in support of the trial court's finding that a novation was in fact intended and effected.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.