NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 1 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: ASSET RESOLUTION, LLC, <br><br> Debtor, <br> _____ <br><br> WILLIAM A. LEONARD, Jr., Chapter 7 Trustee, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> OXBOW INVESTMENT HOLDINGS, LLC, a California limited liability company, <br><br> Defendant-Appellant. | No.   17-16799 <br><br> D.C. Nos.   09-32824-rcj <br> 16-01064-rcj <br><br> MEMORANDUM[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted December 19, 2018
San Francisco, California

Before:  BOGGS,[**] PAEZ, and OWENS, Circuit Judges.

---

   [*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

   [**]   The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Appellant Oxbow Investment Holdings ("Oxbow") appeals from a judgment of the United States District Court for the District of Nevada that granted specific performance of a contract for the sale of a bankruptcy-estate asset—a 27-acre piece of land in San Bernardino County, California ("the Property").

In 2015, Appellee William Leonard ("Leonard"), the bankruptcy trustee, entered into a contract to sell the Property to Oxbow for $825,000. The parties' attorneys negotiated and memorialized the contract on a form document with an Addendum substituting certain terms, particularly "Acceptance."

> Acceptance means the time the offer or final counter offer is accepted in writing by a Party, subject only to any agreed upon contingencies, including but not limited to the requirement of a court order authorizing the sale of the Property and the completion of any required overbid or auction process, and such acceptance is delivered to and personally received by the other Party or the Party's authorized agent in accordance with the terms of this offer or a final counter offer.

Upon Acceptance, Leonard had five days to provide a preliminary title report and make certain disclosures to Oxbow. The dispute over the contract revolves around Paragraph 13.A.(1), which states:

> A. Within the time specified in paragraph 19 [5 days], if Seller has actual knowledge, Seller shall provide to Buyer, in writing, the following information:
> (1) LEGAL PROCEEDINGS: Any lawsuits by or against Seller, threatening or affecting the Property, including any lawsuits alleging a defect or deficiency in the Property or common areas, or any

known notices of abatement or citations filed or issued against the Property.

Within fifteen days of acceptance, Oxbow had to complete any investigations, review the disclosures, and accept the condition of the property. The contract identified the above items as the primary contingencies to sale, as well as court approval and completion of any required overbid. At the end of the fifteen-day period, Oxbow was required to either remove the applicable contingencies or cancel the agreement. The contract stated that, by removing the contingencies, Oxbow had elected to proceed with the transaction.

Oxbow and Leonard signed the contract on June 23, 2015. Fifteen days later, Jonathan Dabbieri, Leonard's counsel, contacted Oxbow to clarify that the fifteen-day period was about to expire and inquired whether Oxbow wished to proceed with the transaction on a non-contingent basis. After some back-and-forth about Oxbow's deposit, Oxbow's principal, Eric Cernich, sent Dabbieri e-mails on July 17 and 23 stating that the transaction was noncontingent. The district court entered an order approving the sale on August 3, 2015.

Shortly before the parties were to close escrow in August 2015, Cernich sent an e-mail requesting an additional sixty days to address issues he had recently discovered in soil and geotechnical reports on the Property. Cernich explained that he would not close without additional time and attempted to cancel the contract, although he said he would rescind the cancellation if he received more time.

Dabbieri responded and notified Cernich that, because Oxbow had removed all contingencies, failure to close would breach the contract. Dabbieri reminded Cernich that "as you will recall" San Bernardino County had filed a Motion for Relief from the automatic bankruptcy stay so the County could proceed with a tax foreclosure sale of the Property because the property taxes were in arrears. He also explained to Cernich that, depending on the response from the district court and the County, Leonard was willing to provide more time.

Ultimately in November 2015, the parties agreed on the following plan. Oxbow would increase its deposit from $25,000 to $50,000, and the deposit would be provided to the County and credited to Oxbow's purchase. The County would continue its hearing on the Motion. Oxbow agreed to close escrow by the end of February 2016.

Escrow did not close, and in April 2016, Leonard filed suit alleging breach of contract and seeking specific performance. Oxbow asserted affirmative defenses of (1) failure to state a claim; (2) failure of condition precedent; (3) estoppel; (4) failure to mitigate damages; (5) unjust enrichment; and (6) failure of condition. It also reserved the right to raise additional defenses upon discovery of grounds to do so. After a bench trial, the district court ruled that Oxbow had breached the contract.

Oxbow appeals, arguing that: (1) Leonard breached the contract by failing to disclose the County's Motion for Relief; (2) the district court erred by excluding

17-16799

certain testimony from Cernich; and (3) the extended time and additional deposit constituted a novation.

We review a district court's factual findings for clear error, *In re the Vill. at Lakeridge, LLC*, 814 F.3d 993, 1002 (9th Cir. 2016), and interpretation of a contract de novo. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009). A district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir. 1983). The parties agree that California law controls the contract's interpretation. We affirm the district court's ruling.

1. Oxbow argues that the district court incorrectly interpreted Paragraph 13.A.(1)[1] of the contract to conclude that, as a matter of law, Leonard was not required to disclose the County's Motion. Oxbow insists that Paragraph 13.A.(1) required Leonard to disclose the Motion because it was a "legal proceeding." Even assuming the Motion is a legal proceeding, as the district court concluded, Oxbow's argument prevails only if the *heading* identifies Leonard's disclosure obligations,

---

[1] Before the district court and in its briefs, Oxbow has consistently maintained that Paragraph 13.A.(1) required Leonard to disclose the Motion. It is not apparent from the record that Oxbow has *ever* asserted that any other portion of the contract required disclosure. In the last minute of its rebuttal at oral argument, Oxbow suggested that a *different* provision of the contract concerning subsequent disclosures required Leonard to disclose the Motion. Because Oxbow did not raise this argument below, it has waived it. *See McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009) (concluding that an argument first raised during oral argument was waived "[b]ecause [it] was not raised clearly and distinctly in the opening brief").

not the terms *following* the heading.

We "read and construe[]" a heading with the language of the contractual term. *Coit v. Jefferson Standard Life Ins. Co.*, 168 P.2d 163, 169 (Cal. 1946). Paragraph 13 identifies disclosure obligations. Each term has a heading in large caps that identifies a general topic, such as "legal proceedings," "neighborhood problems," or "zoning issues." The heading is followed by a more detailed description in ordinary type. Reading the contract as a whole, *see* Cal. Civ. Code § 1641, demonstrates that the items to be disclosed follow the heading because the entire contract follows the same pattern. *See Huverserian v. Catalina Scuba Luv, Inc.*, 110 Cal. Rptr. 3d 112, 115–16 (Ct. App. 2010). The heading "legal proceedings" may be construed consistently with the more specific terms that follow because lawsuits are a type of legal proceeding. *See Coit*, 168 P.2d at 169; *see also Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 223 (Ct. App. 2008) ("[W]here specific words follow general words in a contract, 'the general words are construed to embrace only things similar in nature to those enumerated by the specific words.'" (quoting *Cal. Farm Bureau Fed'n v. Cal. Wildlife Conservation Bd.*, 49 Cal. Rptr. 3d 169, 189 (Ct. App. 2006))). Therefore, the contract only required Leonard to disclose the items listed in Paragraph 13.A.(1), not *all* legal proceedings. Because the Motion for Relief is not a lawsuit or any of the other listed items, the district court did not err in concluding that, as a matter of law, Leonard was not required to disclose it.

2. At trial, Oxbow attempted to raise fraud as a defense, arguing that Leonard obtained its consent to the contract through material omissions, namely Leonard's failure to disclose the Motion. In support of this argument, Oxbow sought to have Cernich testify that, had he known about the Motion, he would not have agreed to purchase the Property because he would have waited to buy it for a cheaper price at the tax sale. The district court refused to allow this testimony because Oxbow had not raised fraud as a defense.

A party must state its affirmative defenses or it has waived them. Fed. R. Civ. P. 8(c); *see* Fed. R. Bankr. P. 7008 (making Fed. R. Civ. P. 8 applicable in proceedings before a bankruptcy court). Oxbow did not raise fraud in its answer, or any defense that could liberally be construed as such. Because Oxbow did not raise this defense, it was waived. *See In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007). The district court did not abuse its discretion by refusing to allow Oxbow to introduce testimony in support of a defense it had not raised in its answer.

3. Oxbow argues that the arrangement culminating in an additional deposit was a novation because Oxbow had timely cancelled the contract and the additional deposit served as new consideration.

The district court ruled that there was no novation. Whether parties entered into a novation depends on the facts and circumstances of each case. *Olympic Fin. Co. v. Thyret*, 337 F.2d 62, 66 (9th Cir. 1964). Under California law, a novation

occurs when the parties to an agreement substitute a new obligation between the same parties with an intent to extinguish the old one. Cal. Civ. Code § 1531. A novation requires: (1) a previous valid obligation; (2) that all parties agree to the new contract; (3) that the old contract is extinguished; and (4) a valid new contract. *Olympic Fin. Co.*, 337 F.2d at 65 (citing *Young v. Benton*, 131 P. 1051, 1052 (Cal. Dist. Ct. App. 1913)). The key factor in distinguishing between contractual modification and novation is whether the obligee intended to release the obligor from his obligation under the original agreement. *Alexander v. Angel*, 236 P.2d 561, 563 (Cal. 1951).

Oxbow argues that it timely canceled the contract, based on its interpretation that the Addendum term defining Acceptance meant that Acceptance, which triggered the fifteen-day due diligence period, did not occur until after the district court approved the sale. The plain language of the Addendum states that Acceptance took place when a party accepted the offer in writing—subject to certain agreed-upon contingencies. Based upon this language, the district court correctly concluded that Acceptance occurred on June 23, 2015, the day the parties signed the contract.[2]

Cernich's cancellation was conditioned on whether he received more time to

---

[2] Oxbow essentially conceded as much at oral argument when it insisted that because the parties signed the contract on June 23, 2015, Leonard was required to disclose the Motion by June 28. Any obligation that Leonard had to disclose information to Oxbow, according to Paragraph 19.A of the contract, only took place 5 days after "Acceptance."

resolve the issues with the Property, and Leonard provided it.  Oxbow ultimately received well over sixty days even before the parties set a new deadline for closing. Leonard consistently maintained that Oxbow was bound by the original agreement. *See Alexander*, 236 P.2d at 564.  Finally, the essential terms of the contract did not change.  Oxbow increased its deposit and consented to its release to pay accrued taxes, but the deposit was credited to the purchase price, and the contract always contemplated that Leonard would use the purchase price to pay accrued property taxes.  The district court did not err in concluding that there was no novation.

AFFIRMED.